UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X
                                                             :
LELANIE FOSTER,                                              :
                                         Plaintiff,          :
                                                             :          13-CV-5857 (JPO)
                   -v-                                       :
                                                             :          OPINION AND ORDER
MAY LEE, ERICKA RODRIGUEZ, and                               :
LASHPIA CORPORATION,                                         :
                                         Defendants.         :
-------------------------------------------------------------X

J. PAUL OETKEN, District Judge:

      Plaintiff Lelanie Foster brings this action against May Lee, Ericka Rodriguez, and

Lashpia Corporation ("Lashpia"), alleging copyright infringement.  17 U.S.C. § 101, *et seq.*

Defendants move for partial summary judgment on the issue of Foster's entitlement to statutory

damages, 17 U.S.C. § 504(c), and attorney's fees and costs, 17 U.S.C. § 505, and for partial

summary judgment that Lee and Rodriguez are not personally liable for infringement.  Foster

moves for partial summary judgment on the issue of Defendants' liability for infringement.  For

the reasons that follow, Foster's motion is granted in part and Defendants' motion is denied.

## I.      Background

      Foster is a freelance photographer.  (Dkt. No. 25, Amended Complaint ¶ 1.)[1]  Lashpia,

doing business as JJ Eyelashes, produces silk eyelash extensions and owns several salons at

which customers can purchase the eyelashes and have them customized and professionally

applied.  (Dkt No. 33, Declaration of May Lee ¶ 4 ["Lee Decl."].)  In connection with an

advertising campaign, Lashpia hired Foster to produce a photograph of a model wearing JJ

Eyelashes.

---

[1] All record citations are to the Amended Complaint unless specified otherwise.

On November 27, 2012, and December 4, 2012, Foster conducted a photo shoot.  (Dkt. No. 43, Declaration of Lelanie Foster ¶ 15 ["Foster Decl."]; Lee Decl. ¶ 7.)  According to Foster, at first the "shoots with JJ Eyelashes were solely for the purpose of using prints in the physical premises of the JJ Eyelashes salons, a promotional calendar, or on its web site."  (Foster Decl. ¶ 13.)  At one of the shoots, though, Foster "verbally agreed to the use of a single retouched version of one of [her] photographs . . . in *Allure* magazine."  (*Id.* ¶¶ 23–24.)  Her "understanding was that the advertisement would be small in scale."  (*Id.* ¶ 22.)  According to Lee, Foster "agreed that the photograph would be the property of Lashpia Corporation with the understanding that Lashpia intended to use to the photograph for its marketing campaign."  (Lee Decl. ¶ 10.)  The parties' agreement was not reduced to writing.

The photograph appeared in the March 2013 Manhattan subscriber edition of *Allure* magazine.  (Foster Decl. ¶ 26.)  When she saw the magazine, Foster became concerned that "the scale and scope of the *Allure* magazine advertisement was much broader than what Ms. Rodriguez [then an employee of Lashpia] had initially told me."  (*Id.* ¶ 28.)  Around the same time, Foster discovered that the photograph "appeared on the PR Newswire digital billboard in Times Square."  (*Id.* ¶ 29.)  She reached out to Rodriguez to express her concern.  (*Id.* ¶ 28.)  After a series of phone conversations made clear that Lashpia would not pay Foster any additional fees for its use of the photograph, Foster registered a copyright in the photograph on May 9, 2013.  (*Id.* ¶¶ 31, 33.)  She filed this action shortly thereafter.  (Dkt. No. 1, Complaint.)

## II.   Discussion

In their Answer to the Amended Complaint, Defendants deny (or deny knowledge of) all the allegations in the Amended Complaint, and interpose only two affirmative defenses.  (Dkt. No. 27, Answer ["Answer"].)  First, they plead the affirmative defense that "[t]he Foster photograph was . . . a work for hire."  (*Id.*, at 1.)  Second, they plead the affirmative defense that

2

"[t]he Foster photograph is a joint work." (*Id.* at 2.)  Foster moves for summary judgment on the ground that both defenses fail as a matter of law.  In their Reply Memorandum of Law in response to Foster's motion, Defendants raise—for the first time—the affirmative defense that they had an implied license for their use of Foster's photograph.  (Dkt. No. 50, Defendants' Reply Memorandum of Law, at 2 ["Defendants' Reply"].)  Foster contends that this defense has been waived and that, regardless, it fails as a matter of law.  (Dkt. No. 59, Foster's Reply Memorandum of Law, at 3.)

Defendants move for partial summary judgment on the ground that Foster is not entitled to statutory damages because the photograph was first published on December 27 or 28, 2012, on their website, www.jjeyelash.com/about-us.  (Dkt. No. 34, Defendants' Memorandum of Law in Support of Their Motion for Partial Summary Judgment, at 2 ["Defendants' Memorandum"].)  They also move for partial summary judgment on the ground that there is no evidence with respect to Lee's and Rodriguez's personal liability.

## A.    Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.  A fact is material if it "might affect the outcome of the suit under the governing law," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and a dispute is genuine if, considering the record as a whole, a rational jury could find in favor of the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The initial burden of a movant on summary judgment is to provide evidence on each element of her claim or defense illustrating her entitlement to relief.  *Vt. Teddy Bear Co. v. 1–800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir.2004).  If the movant meets this initial burden of production, the non-moving party must then identify specific facts demonstrating a genuine issue

for trial.  Fed. R. Civ. P. 56(f).  The court views all evidence "in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in its favor."  *Anderson*, 447 U.S. at 250–51.  A motion for summary judgment may be granted only if "no reasonable trier of fact could find in favor of the nonmoving party."  *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (citation omitted).  But the non-moving party cannot rely upon mere "conclusory statements, conjecture, or speculation" to meet its burden.  *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996) (citing *Matsushita*, 475 U.S. at 587).

**B.     Foster's Motion**

Foster moves for summary judgment on the ground that Defendants' affirmative defenses fail as a matter of law.  Defendants concede that Foster's photograph is copyrighted and that they infringed that copyright if the photograph is not a joint work, a work for hire, or the subject of an unrestricted license.[2]

**1.     Joint Work**

Defendants contend that, because Lee and Rodriguez participated in the photo shoot, the resulting photograph is a "joint work" within the meaning of the Copyright Act.  17 U.S.C. § 101 (defining a joint work as "a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole").

Copyright law imposes two requirements for a unitary work—a work that cannot be separated into individual contributions—to qualify as a joint work.  First, the authors must "inten[d] . . . that their contributions be merged into a unitary whole."  *Childress v. Taylor*, 945 F.2d 500, 505 (2d Cir. 1991).  Second, the contribution of each author must itself be

---

[2] Although Defendants' arguments regarding the personal liability of Lee and Rodriguez are treated as responses to Foster's motion for summary judgment, these arguments are addressed below because they were not explicitly offered in connection with Foster's motion.

independently eligible for copyright protection.  *Id.* at 507.  Foster contends that no reasonable juror could conclude that she, Lee, and Rodriguez intended to be joint authors and that no reasonable juror could conclude that Lee's and Rodriguez's contributions were copyrightable.

**Intent.**  To qualify as a joint work, the authors must "entertain in their minds the concept of joint authorship."  *Id.* at 508.  "This requirement of mutual intent recognizes that, since coauthors are afforded equal rights in the co-authored work, the 'equal sharing of rights should be reserved for relationships in which all participants fully intend to be joint authors.'"  *Thomson v. Larson*, 147 F.3d 195, 201 (2d Cir. 1998) (quoting *Childress*, 945 F.2d at 508).

Defendants offer the following evidence of mutual intent.  First, Lee and Rodriguez were "present . . . at the photo shoot when Ms. Foster took the subject photograph."  (Dkt. No. 51, Supplemental Declaration of May Lee ¶ 2 ["Supp. Lee Decl."].)  Second, Lashpia "supplied the space where the photo shoot was conducted and retained the model who [*sic*] Foster photographed."  (Lee Decl. ¶ 8.)  Finally, "Ms. Foster collaborated with Ms. Rodriguez to transform the photograph into a JJ Eyelashes advertisement."  (*Id.* ¶ 12.)  "Transform[ing]" the photograph consisted of adding text.  (*Id.* ¶ 13 ("we want . . . longer . . . sexier . . . thicker . . . eyelashes.") (ellipses in original).)

There is no evidence on which a reasonable juror could conclude that the parties intended to be joint authors of the photograph.  Indeed, even Lee's declaration suggests that all parties involved believed that *Foster* would be the author: she affirmed that "Lashpia Corporation retained Lelanie Foster to *conduct* a photo shoot . . . ."  (*Id.* ¶ 7 (emphasis added).)  Further, the undisputed evidence is that Rodriguez contacted Foster to ask her permission to use the photograph in *Allure*.  (Foster Decl. ¶ 23.)  This strongly suggests that Rodriguez regarded *Foster* as the sole author of the work.  In any event, there is no evidence—not even in Lee's declaration—that any participant in the photo shoot "fully intend[ed]" that Lee, Rodriguez, and

5

Foster "be joint authors." *Thomson*, 147 F.3d at 201.  Apart from their Answer, which states simply that "[t]he Foster photograph is a joint work," Defendants do not mention this affirmative defense in either of their memoranda of law and do not offer any other papers to defend it.  (*See generally* Defendants' Memorandum; Defendants' Reply.)  Foster's motion for summary judgment on this affirmative defense is therefore granted.

**Independently Copyrightable Contributions.**  Although Defendants' affirmative defense of joint authorship fails for lack of intent, it also fails as a matter of law on the independently sufficient ground that there is no dispute of material fact that Lee's and Rodriguez's contributions to the photograph were not independently copyrightable.  In the context of a photo shoot, "[m]ere selection of the subject matter to be photographed does not create joint authorship."  *SHL Imaging, Inc. v. Artisan House, Inc.*, 117 F. Supp. 2d 301, 315 (S.D.N.Y. 2000).  Apart from the bare contention that Foster and Rodriguez "collaborated" (Lee Decl. ¶ 12) on the advertisement, there is no evidence that Lee and Rodriguez did anything other than "select[] . . . the subject matter to be photographed."  *SHL Imaging*, 117 F. Supp. 2d at 315.  Foster's motion for summary judgment on the affirmative defense of joint authorship is granted.

### 2.    Work for Hire

Defendants contend—albeit only in their Answer—that the photograph was a work for hire.  Because this affirmative defense was mentioned only in the Answer, Defendants have not offered any specifics as to *why* they believe this photograph to be a work for hire.

"There are two categories of work-for-hire: (1) works created by employees; and (2) works created by independent contractors under special order or commission."  *SHL Imaging*, 117 F. Supp. 2d at 312 (citing 17 U.S.C. § 101).  The second category requires a written work-for-hire agreement and does not include photographs.  *Id.*  Because the work at issue here is a photograph and because there is no written work-for-hire agreement here, only the first category

is possibly applicable.  The question, then, is whether a reasonable juror could conclude that Foster was an employee of Lashpia and that the photograph was created within the scope of her employment.

Federal courts determine who is an employee and who is an independent contractor using a multi-factor balancing test.  Although the Supreme Court has identified thirteen potential factors, *see Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 750–751 (1989), the Second Circuit has identified five that are particularly important, *Aymes v. Bonelli*, 980 F.2d 857, 861 (2d Cir. 1992).  They are "(1) the hiring party's right to control the manner and means of creation; (2) the skill required; (3) the provision of employee benefits; (4) the tax treatment of the hired party; and (5) whether the hiring party has the right to assign additional projects to the hired party."  *SHL Imaging*, 117 F. Supp. 2d at 312–13 (quoting *Aymes,* 980 F.2d at 861.)

Defendants offer no evidence contesting the second, third, fourth, and fifth factors.  And the only evidence they offer with respect to the first factor is the bare statement that they "retained" Foster, (Lee Decl. ¶ 7), and that they told her whom to photograph.  (*See generally id.*)  But just as "[m]ere selection of the subject matter to be photographed does not create joint authorship," neither does it create a work for hire.  *SHL Imaging*, 117 F. Supp. 2d at 313 (finding that a photograph was not a work for hire where "[d]efendants d[id] not claim that they instructed plaintiff to use any particular camera, film or equipment.").  Foster's motion for summary judgment on the affirmative defense of work-for-hire is granted.

### 3.    License

Finally, Defendants contend that they had an unrestricted license to use the photograph because Foster orally granted them that right.

License is an affirmative defense to copyright infringement.  *E.g.*, *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 775 (7th Cir. 1996); *United States v. Larracuente*, 952 F.2d 672, 673–74 (2d Cir.

1992); *Oddo v. Ries*, 743 F.2d 630, 634 n.6 (9th Cir. 1984). The affirmative defense of license

"must be affirmatively pleaded" in the Answer. *Oddo*, 743 F.2d at 634 n.6. Failure to plead an

affirmative defense ordinarily results in forfeiture[3] of that defense. *Wood v. Milyard*, 132 S. Ct.

1826, 1832 (2012). "An affirmative defense, once forfeited, is excluded from the case . . . ." *Id.*

(internal quotation marks and alterations omitted); *see also Sellers v. M.C. Floor Crafters, Inc.*,

842 F.2d 639, 642 (2d Cir. 1988); CHARLES ALAN WRIGHT, ET AL., 5 FED. PRAC. & PROCEDURE §

1278 (3d ed. 2013).

Defendants did not plead license in their Answer, nor have they sought leave to amend

the Answer. They did not mention the affirmative defense in their papers in support of their

motion for summary judgment either. Although the Court enjoys the discretion to excuse a

defendant's failure to plead an affirmative defense, *Wood*, 132 S. Ct. at 1832, excusal is

generally unwarranted where plaintiffs have suffered prejudice as a result of the defendant's

negligence and where they lack an adequate opportunity to respond in a timely fashion, *e.g.*,

*Cedars-Sinai Medical Ctr. v. Shalala*, 177 F.3d 1126, 1128–29 (9th Cir. 1999). Courts excuse

the failure to plead affirmative defenses only when they find that the purposes of the rule

requiring pleading of an affirmative defense—to give notice to the plaintiff and to give her an

opportunity to respond—have been met. *E.g.*, *Curry v. City of Syracuse*, 316 F.3d 324, 330–31

(2d Cir. 2003). Similarly, forfeiture "may not be proper where the defense is raised at the first

pragmatically possible time and applying it at that time would not unfairly prejudice the

opposing party." *Am. Fed. Grp., Ltd. v. Rothenberg*, 136 F.3d 897, 910 (2d Cir. 1998).

---

[3] Although Foster contends that Defendants "waived" the defense of license, they actually
forfeited it. "A waived claim or defense is one that a party has knowingly and intelligently
relinquished; a forfeited plea is one that a party has merely failed to preserve." *Wood*, 132 S. Ct.
at 1833 n.4 (citing *Kontrick v. Ryan*, 540 U.S. 443, 458, n.13 (2004); *United States v. Olano*, 507
U.S. 725, 733 (1993)).

None of these exceptions applies here.  Defendants have waited until a late stage in the case to mention the defense of license and, as such, prejudice is clear.  Defendants waited to raise the issue of license until their reply memorandum of law in support of their own motion for summary judgment on the issue of statutory damages and in opposition to Foster's motion for summary judgment on the two affirmative defenses Defendants mentioned in the Answer.  They have not identified any reason why they could not have raised the defense until this late stage.  Foster's only opportunity to respond to this argument was in her reply memorandum.  During discovery—which was ongoing as these motions were being briefed—Foster relied on Defendants' assertion that their only defenses would be (1) joint work and (2) work-for-hire.  As a result, she did not depose Lee or Rodriguez and did not focus on establishing the precise scope of the permission Foster gave Lashpia to use the photograph.  Therefore, to allow Defendants' to raise the defense of license at this stage of the litigation would require reopening discovery.

 The Court finds that it would result in significant unfairness to allow Defendants to raise the defense of license at this late stage of the litigation.  Accordingly, the defense is forfeited.  Foster's motion for summary judgment on the issue of liability for infringement is granted.[4]

**B.    Defendants' Motion**

Defendants move for summary judgment on the issue of statutory damages and attorney's fees and on the issue of Lee and Rodriguez's personal liability.

---

[4] To the extent that Defendants contend that *ownership* of the copyright transferred to Lashpia because of the conversation at the photo shoot (*e.g.*, Supp. Lee Decl. ¶ 2 ("Ms. Foster agreed with me that the resulting photographs would be the property of Lashpia . . . .")), this argument fails because copyright ownership cannot be voluntarily transferred without a writing.  17 U.S.C. § 204(a).

### 1.    Date of First Publication

Defendants move for summary judgment on the ground that Foster is not entitled to statutory damages and attorney's fees because the photograph was first "published," within the meaning of copyright law, on December 27 or 28, 2012.  (Foster concedes that if this is the first publication date, she would not be eligible for statutory damages or attorney's fees under 17 U.S.C. § 412(2).)  Foster contends (1) that Defendants have forfeited this argument because, in an interrogatory response, they identified "February or March of 2013" as the first date of publication (Dkt. No. 42, Ex. 3) and (2) that there is a genuine dispute of material fact as to whether the photograph actually was published in December of 2012.

In her initial set of interrogatories, Foster asked Defendants when the photograph was first published.  (*Id.*)  Defendants said "February or March of 2013."  (*Id.*)  Now, Defendants contend that the photograph was actually published in December of 2012, when Lashpia posted the photograph on one of its two websites.  (Defendants' Reply at 5–11.)

Interrogatory answers may properly limit the scope of facts to be proved at trial or on summary judgment.  *E.g.*, WRIGHT, 8B FED. PRAC. & PROC. § 2181.  These consequences, though, should flow only where "appropriate."  *Id.*  "[U]nder ordinary circumstances, it is not the[] function [of interrogatories] to limit a party's proof in the way that pleadings do." *McElroy v. United Air Lines, Inc.*, 21 F.R.D. 100, 102 (W.D. Mo. 1957).

Defendants argue that their initial interrogatory answers should be ignored because they "understood the interrogatory request concerning the first publication of Ms. Foster's photograph to be an inquiry surrounding its first appearance in *Allure* magazine (i.e., publication in the physical sense)."  (Defendants' Reply at 10 n.3.)  But Foster *defined* the word "publication" in her interrogatory as "any reproduction, distribution, or display as defined under the Copyright Act including, but not limited to, print, electronic, digital, social media, public billboard, or any

other exploitation of the work accessible by the public." (Dkt. No. 42, Ex. 2.) Next, Defendants contend that, because Lee did not sign the interrogatory responses, it is somehow unfair to hold Defendants to their contents. (Defendants' Reply at 10 n.3.) This argument is without merit. Nonetheless, despite Defendants' negligence in preparing an appropriate interrogatory response, the Court is persuaded that strictly holding them to their initial response would be too strong a sanction because Foster has had a full and fair opportunity to respond to their arguments.

The question, then, is whether there is a genuine dispute of material fact as to when the photograph was first published. Defendants offer Lee's declaration and a supplemental internet search as evidence that the photograph appeared on one of Lashpia's websites in December 2012. Foster offers evidence from the "Wayback Machine"—a service that archives webpages as they existed at a given time—that the image did not, in fact, appear on the websites until much later. Notwithstanding potential evidentiary problems with the Wayback Machine, it is clear that Foster could present admissible evidence at trial sufficient to raise a genuine dispute of material fact as to when the photograph appeared on the internet. *See, e.g.*, Karén Gazaryan, *Authenticity of Archived Websites: The Need to Lower the Evidentiary Hurdle Is Imminent*, 39 RUTGERS COMPUTER & TECH. L.J. 216, 229 (2013); Deborah R. Eltgroth, *Best Evidence and the Wayback Machine: Toward A Workable Authentication Standard for Archived Internet Evidence*, 78 FORDHAM L. REV. 181, 184 (2009); Matthew Fagan, *"Can You Do A Wayback on That?" the Legal Community's Use of Cached Web Pages in and out of Trial*, 13 B.U. J. SCI. & TECH. L. 46, 56 (2007). Particularly because Foster has presented an affidavit from an employee of Internet Archive—the foundation that operates the Wayback Machine—the Court is persuaded that Foster would be able to present relevant, authentic, non-hearsay evidence in the form of an archived webpage produced by the Wayback Machine. There is a genuine issue of material fact

as to when the photograph was first published.  Summary judgment on this issue is therefore denied.

### 2.      Personal Liability

Finally, Defendants have requested partial summary judgment on the ground that there is no evidence to support the personal liability of Lee and Rodriguez.  Defendants failed to raise this argument in their initial motion for summary judgment.  Foster therefore has not had an opportunity to respond to it.  As such, insofar as Defendants move for summary judgment in their favor on the ground of personal liability, that motion is forfeited because it was not raised in their memorandum of law in support of the motion.  The Court therefore considers Defendants' arguments on this point solely as opposition to Foster's motion for summary judgment—that is, as contesting Foster's entitlement to summary judgment on liability as against the two individual defendants.

In copyright cases, "[w]hen the right and ability to supervise[] coalesce with an obvious and direct financial interest in the exploitation of copyrighted materials . . . the purposes of copyright law may be best effectuated by the imposition of liability upon the beneficiary of that exploitation."  *Banff Ltd. v. Limited, Inc.*, 869 F. Supp. 1103, 1107 (S.D.N.Y. 1994) (quoting *Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304, 307 (2d Cir. 1963)) (internal quotation marks omitted).  Defendants assert that Foster "has not alleged when, where or how Ms. Lee or Ms. Rodriguez committed specific infringing acts."  (Defendants' Memorandum, at 5.)  But according to *Defendants'* version of the facts, Lee "gave final approval" to the infringing use of the photograph in *Allure* (Dkt. No. 34, Ex. 1, Defendants' Rule 56.1 Statement ¶ 16).  And because she is also the President and CEO of Lashpia, a reasonable juror could conclude that she had both the "right and ability to supervise" the infringing use and "a direct financial interest" in

doing so.  *Shapiro*, 316 F.2d at 307.  But because a reasonable juror would not be required to believe these facts, Foster's motion for summary judgment on this issue is denied.

Evidence of Rodriguez's role and financial interest in the infringing use, on the other hand, was not developed in the record.  Accordingly, a reasonable juror could conclude that she is not personally liable for the infringing use.  Foster's motion for summary judgment on the issue of Rodriguez's liability is therefore denied.

**III.    Conclusion**

For the foregoing reasons, Foster's motion for partial summary judgment is GRANTED with respect to the liability of Lashpia Corporation and DENIED with respect to the personal liability of Lee and Rodriguez.  Defendants' motion for partial summary judgment is DENIED.

The Clerk of the Court is directed to close the motions at docket numbers 31 and 40.


SO ORDERED.


Dated: February 25, 2015
       New York, New York

_____
              J. PAUL OETKEN
              United States District Judge

13